238 N.J. Super. 149 (1990)
569 A.2d 296
RIDGE CHEVROLET-OLDSMOBILE, INC., PLAINTIFF-RESPONDENT,
v.
LEO SCARANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 1989.
Decided January 30, 1990.
*150 Before Judges KING, SHEBELL and KEEFE.
Blake & Henry, attorneys for appellant (Dexter B. Blake, Jr., on the brief).
*151 Bisogno & Loeffler, attorneys for respondent (Vincent T. Bisogno, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The issues presented on this appeal are: (1) whether there was sufficient evidence to support the trial judge's determination that the defendant Leo Scarano should be estopped from terminating the real estate contract with plaintiff; and (2) whether specific performance in favor of the plaintiff buyer was an appropriate remedy where performance of the conditions precedent necessary to bind the buyer have not been accomplished and their satisfactory completion is in the control of a non-party.
Defendant Scarano appeals from a judgment entered after a plenary trial ordering specific performance of a real estate contract entered into between Scarano, as seller, and plaintiff Ridge Chevrolet-Oldsmobile, Inc. (Ridge), as buyer. The contract involved the sale of a 3.72 acre parcel of land in Bernards Township, New Jersey. Ridge's suit for specific performance was filed in response to Scarano's effort to terminate the contract. The trial judge found that Ridge did not breach the contract, that Scarano was estopped by his conduct from terminating it and granted specific performance to Ridge.
On appeal, Scarano argues that the trial judge erred because the evidence supports his contention that Ridge breached the contract and estoppel cannot be used in favor of one who is in breach. Additionally, Scarano contends that specific performance is an inappropriate remedy where: 1) plaintiff has materially breached the contract; 2) mutuality of the remedy of specific performance does not exist for both parties; and 3) completion of the conditions precedent necessary to bind Ridge under the contract rests in the discretion of a third party uncontrolled by either Scarano or Ridge.
*152 We affirm the trial judge's conclusion that Ridge did not breach the contract and that Scarano was estopped by his conduct from terminating the contract when he did. However, we hold that specific performance is an inappropriate remedy in these circumstances because site plan and variance approval, both conditions precedent to holding Ridge bound under the contract, rest in the discretion of a third party, Bernards Township Board of Adjustment, and Ridge has not waived the performance of those conditions.
These are the essential facts. The contract was executed on June 24, 1986. The price for the property was $690,000 with Ridge paying $5,000 of that amount upon signing the contract. An additional deposit of $25,000 was to be paid within 10 days of its execution. Plaintiff intended to erect an automobile dealership on the land. For that reason, the contract was contingent upon Ridge obtaining site plan approval, wetland approval and necessary variances from the appropriate governmental agencies. The contract required that all approvals be obtained by January 1, 1987, or Scarano had the option of either terminating the contract or extending the deadline. Scarano testified that the January 1, 1987 deadline was critical because the increase in the capital gains tax was to take effect after that date and the contract price took the lower tax rate into consideration.
The additional deposit of $25,000 was never paid by Ridge. There was a factual dispute as to why Scarano never received the money. Ridge's president testified that he was encountering unanticipated expenses and delays because of engineering requirements and studies to delineate wetlands and, because of that, Scarano agreed to waive payment of the $25,000 deposit. Conversely, Scarano asserted that he requested the deposit on many occasions and that Ridge communicated a variety of excuses, all accompanied by promises to pay the deposit shortly thereafter.
*153 Beginning in June, 1986, Ridge proceeded to obtain architectural and engineering plans, studies to delineate wetlands, and expert witnesses for upcoming hearings regarding site plan and variance approval. Ridge spent $37,000 on these matters and by December, 1986 received approval from the United States Army Corps of Engineers to build in the wetlands. Scarano was kept apprised of plaintiff's progress in these matters throughout the period. Scarano did not terminate the contract on January 1, 1987. Further, on June 24, 1987, six months after he had the right to terminate, Scarano signed an Owner's Authorization on the Bernards Township Board of Adjustment application permitting Ridge to appear before the Board for site plan approval and variances.
On October 14, 1987 Ridge's engineering plans were completed. This enabled Ridge to file an application with the Board. The first hearing was on December 9, 1987 and the second was scheduled for early January, 1988. However, on December 21, 1987 Scarano terminated the contract on written notice to Ridge. The termination was allegedly based on Ridge's failure to gain the required municipal approvals by January 1, 1987 and for failure to pay the $25,000 deposit. Scarano returned the initial $5,000 deposit plus one-half of the accrued interest as provided by the contract.
Scarano's argument that Ridge was entitled to no relief because Ridge breached the contract was based on two factual contentions: 1) Ridge never paid the required additional deposit of $25,000, and 2) Ridge did not obtain the necessary wetland approvals, site plan approval, and variances before January 1, 1987 as required by the contract. The judge resolved both of those issues against Scarano. He found that Scarano waived both the payment of the deposit and his right to terminate the contract on January 1, 1987. The judge further found that Scarano's conduct resulted in an extension of the date by which the approvals were required to be obtained by Ridge. We have reviewed the record and conclude that the judge's findings are *154 "supported by adequate substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). An appellate court must not "disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155, 188 A.2d 43 (App.Div. 1963)).
We specifically endorse the finding made by the trial judge on the issue of equitable estoppel.
[T]he Court finds that Defendant by his actions and behavior implied a continuing contractual relationship without any indication of dissatisfaction, concerns or possible breach by Plaintiff until after approximately one year into the contract. Due to Plaintiff's reliance upon Defendant's conduct of silence and alluding acceptance, Plaintiff expended funds in excess of $30,000 to employ experts, legal witnesses and procure architectural and engineering analysts in order to obtain site plan approval and variances. Such reliance by a party who in good faith was led to change his position to his detriment is entitled, through the equity power of this Court, to estop the inducing party from asserting rights which otherwise may have existed. Carlsen v. Masters, Mates and Pilots Pension Plan Trust, 80 N.J. 334, 339 [403 A.2d 880] (1979).
Equitable estoppel is applicable where "conduct, either express or implied, ... reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." Miller v. Teachers' Pension & Annuity Fund, 179 N.J. Super. 473, 477, 432 A.2d 560 (App.Div. 1981), certif. den. 88 N.J. 502, 443 A.2d 714 (1981) (quoting Dambro v. Union County Parks Comm'n, 130 N.J. Super. 450, 457, 327 A.2d 466 (Law Div. 1974)). Further, a party asserting equitable estoppel may rely upon "conduct, inaction, representation of the actor, misrepresentation, silence or omission." Fairken Assoc. v. Hutchin, 223 N.J. Super. 274, 280, 538 A.2d 465 (App.Div. 1987).
Having correctly determined that Scarano's attempt to terminate the contact was a nullity, the trial judge then ordered specific performance, even though neither the site plan approval nor the variances had been obtained and without any evidence as to when a final decision on those matters would be *155 made by the Board. Scarano argues that the judge's order has put him in the anomalous position of being without a remedy of specific performance himself. He points out in his brief that because "Ridge has never obtained its variance or site plan approvals.... specific performance could never be granted to Scarano if he brought suit under the contract as it presently stands."
Generally speaking, the rule of mutuality of remedy has been repudiated by Fleischer v. James Drug Stores, Inc., 1 N.J. 138, 149, 62 A.2d 383 (1948). One commentator has stated:
If there ever was a rule that mutuality of remedy existed, not merely at the time of the decree, but at the time of the formation of the contract, as a condition of equitable relief, it has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule today. What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant. Mutuality of remedy is important insofar only as its presence is essential to the attainment of that end.
11 S. Williston, A Treatise on the Law of Contracts § 1433, at 885-86 (3d ed. 1968). See Kalman Floor Co., Inc. v. Muscarella, Inc., 196 N.J. Super. 16, 481 A.2d 553 (App.Div. 1984), aff'd o.b. 98 N.J. 266, 486 A.2d 334 (1985). Thus, mutuality of remedy should not be the focus of the inquiry but, rather, whether imposition of specific performance was a "harsh or oppressive" result. Stehr v. Sawyer, 40 N.J. 352, 357, 192 A.2d 569 (1963).
While one can say that Scarano waived his right to terminate the contract on January 1, 1987, one cannot say that his waiver resulted in giving Ridge a contract without time limits in which to perform the preconditions necessary to bind it under the contract. Ordinarily, where no time limit is set forth in the contract for its completion, a reasonable time limit is implied. Becker v. Sunrise at Elkridge, 226 N.J. Super. 119, 129, 543 A.2d 977 (App.Div. 1988), certif. den. 113 N.J. 356, 550 A.2d 465 (1988). Had Scarano recognized that he waived January 1, 1987 as a date which was of the essence of the contract and had he not thereafter attempted to terminate it, he could *156 have demanded Ridge's performance by another date certain. All that would be required in such circumstances is that the new date established by Scarano be "reasonable" and "bear a reasonable relation to the time already elapsed." See Paradisio v. Mazejy, 3 N.J. 110, 115, 69 A.2d 15 (1949). An order requiring Scarano to specifically perform the contract without imposing any time limit on Ridge to satisfy the preconditions for closing is an unduly harsh remedy to impose on Scarano simply because he made the wrong legal appraisal of his rights under the contract.
There is an additional basis for our decision. The long established rule is that the party who "seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part." Stamato v. Agamie, 24 N.J. 309, 316, 131 A.2d 745 (1957). Conversely, a party who is substantially unable to perform its obligations under a contract cannot obtain a decree for specific performance. In re Estate of Hoffman, 63 N.J. 69, 304 A.2d 721 (1973); See also Restatement (Second) of Contracts § 373 (1981); 11 S. Williston, A Treatise on the Law of Contracts § 1425 (3d ed. 1968); Korb v. Spray Beach Hotel, 19 N.J. Super. 226, 88 A.2d 280 (Law Div. 1952), aff'd 24 N.J. Super. 151, 93 A.2d 578 (App.Div. 1952). In this case, Ridge was unwilling to perform under the contract and accept title because the conditions precedent to its obligation to do so neither had been met nor waived.[1] Moreover, whether such conditions will ever be met is a matter solely within the discretion of a third party, the Board of Adjustment.
The established rule in New Jersey is: "specific performance will not be decreed where compliance rests upon the will or discretion of an uncontrolled third party, particularly a governmental *157 body." Dworman v. Mayor & Bd. of Aldermen, etc., Morristown, 370 F. Supp. 1056, 1077-78 (D.N.J. 1974). In Popular Refreshments, Inc. v. Fuller's Milk Bar, 85 N.J. Super. 528, 540, 205 A.2d 445 (App.Div. 1964), certif. den. 44 N.J. 409, 209 A.2d 143 (1965), we held that where a subdivision approval was an implied condition of the contract and it was not fulfilled, specific performance was properly denied. See also DiCataldo v. Harold Corp., 15 N.J. Super. 471, 83 A.2d 545 (Ch.Div. 1951). The reason behind the rule is clear. To permit specific performance in such circumstances creates an open-ended contract resulting in unfairness to the vendor and requiring the court to maintain supervision over the performance of the contract for an indeterminate period of time. See Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384, 164 A.2d 785 (App.Div. 1960).
Ridge relies upon Gulf Oil Corp. v. Montanaro, 94 N.J. Super. 348, 228 A.2d 352 (Ch.Div. 1967), as authority that specific performance may be granted even if municipal approval is required. The judge in Gulf Oil said:
Defendant contends that equity may not order specific performance of a contract where compliance rests on the will or discretion of a third party uncontrolled by defendant. But here, since the planning board has approved the subdivision, this objection has been rendered academic and should no longer serve as a bar to the court's granting of specific performance. Then, too, even if subdivision approval had not as yet been obtained, it would appear that the granting of specific Performance might nevertheless be ordered by the court but entry of judgment be withheld until subdivision approval actually issued. [Emphasis added.]
We note that the condition precedent in Gulf Oil had been met by the time the court decided the case. Thus, the portion of the opinion relied upon by Ridge was unnecessary to the decision in the matter and is dicta. Moreover, we have been unable to locate any appellate-level decision which adopts the view advanced in that case. We believe the better reasoned approach is to deny specific performance under circumstances such as those that exist here.
The judgment in favor of Ridge declaring that the contract has not been terminated is affirmed. The remedy of specific *158 performance is vacated and the matter is remanded for the purpose of determining the time in which Ridge must complete the conditions precedent unless the parties are able to do so by agreement.
Affirmed in part; modified and remanded in part.
NOTES
[1] We note, however, if on remand Ridge waives the performance of the conditions precedent and agrees to accept title without site plan or variance approval, an order granting specific performance may be appropriate.