**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0778-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH ZACCARINO and
MJZ, LLC,

    Defendants-Appellants.

_____

Submitted February 27, 2024 – Decided April 26, 2024

Before Whipple, Mayer and Enright.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 22-009-A.

Lavery, Selvaggi, Abromitis & Cohen, PC, attorneys for appellants (Lawrence P. Cohen, on the briefs).

Mason Thompson, LLC, attorneys for respondent (Brian W. Mason, on the brief).

PER CURIAM

    Defendants MJZ, LLC (MJZ) and MJZ's owner, Joseph Zaccarino, appeal

from an October 20, 2022 order finding them guilty of violating Mount Olive Township (Township) Land Use Ordinance § 550-101D (Ordinance). We affirm.

I.

Defendants own property at 172 Smithtown Road (Property) in the Township. The Property is situated in the Township's RR-A zone, which permits residential and agricultural uses. The Property sits on approximately eleven acres and consists of a residence, a farm assessed area managed by a tenant farmer, and a 5,000 square foot pole barn that houses an office, bathroom, and four service bays.

In May 2021, the Township's Planner and present Zoning Officer, Charles McGroarty, received a complaint from one of defendants' neighbors about noise on the Property. McGroarty inspected the Property and issued a notice of violation to defendants for operating what he believed to be a landscaping business, in violation of the Ordinance. Three months later, defendants received a summons from the Township for the violation.

The case proceeded to trial before the municipal court in October 2021. During the five-day trial, the State called multiple witnesses to testify, including McGroarty. McGroarty stated he inspected the Property on multiple occasions

after receiving a noise complaint from one of defendants' neighbors, as well as complaints there was "a lot of truck traffic . . . [and] constant activity on the site." He also testified that when he visited the Property on August 3, 2021, he saw large construction equipment and employees working there. McGroarty stated "the activities . . . on the [P]roperty" were consistent with "a landscape business" because "there were . . . vehicles parked there, which [he] took to be employee parking," because "there were no customers walking around." He also noted dump trucks and a backhoe on the site, as well as "concrete bins," which were "typical of what one would find . . . on a landscape business property." Concluding defendants were violating the Ordinance by operating a landscaping business on the Property, a use not permitted in the RR-A zone, McGroarty "hand delivered a summons" "to one of the two . . . women . . . working inside [defendants'] office" on August 3, 2021.

When McGroarty visited the Property several more times in August 2021, he saw large construction equipment, concrete storage bins, and employees working in the office inside the barn. He inspected the Property again in October 2021, and saw two men "working . . . in the bay area" of the barn. McGroarty introduced himself to the men, and "[t]hey directed [him] to [defendants']

A-0778-22

office," where McGroarty "hand delivered a[nother] . . . violation notice for subsequent violations . . . [he] believed [we]re occurring on the site."

Once McGroarty's testimony concluded and the State rested, the defense moved to dismiss the case. The municipal judge denied the motion, finding "the State . . . sustained its burden at th[at] stage of the proceeding [to show] . . . defendant[s were] using the [P]roperty for a landscape business."

The defense called Frank Holzworth, the prior Property owner. Holzworth testified that he applied to the Township Planning Board (Board) in February 1979 for site plan approval to construct a pole barn on the Property and represented to the Board he intended to grow nursery stock there. By then, Holzworth started his own landscaping business off site, so he also proposed storing his landscaping equipment in the pole barn. There were no other structures on the Property at that time.

On cross-examination, Holzworth admitted that when he and his attorney appeared before the Board in February 1979, his attorney assured the Board members that Holzworth had no intention of using the Property for his landscaping business. Holzworth testified he "did[ not] interrupt" or "correct" his attorney when counsel made this representation before the Board, even though "it was [his] intention to use the [P]roperty for [his] landscape business."

4

Further, Holzworth testified the Board adopted a resolution in March 1979, allowing construction of the pole barn for his proposed nursery. Holzworth acknowledged the resolution stated, in part:

> The applicant testified that he proposes to use this property for the establishment of a nursery for shrubs and flowers, which nursery shall not be operated as a retail outlet, but solely for the purpose of use in his landscape business. The garage building is to be utilized for the storage of equipment utilized in the operation of the nursery. Some of the equipment also will be utilized in the landscaping business.
>
> [(Emphasis added).]

Notwithstanding the terms set forth in the resolution, as well as the representations he and his attorney made to the Board in 1979, Holzworth testified that he interpreted the resolution as permitting him to run a landscaping business on the Property. He stated on cross-examination that he "knew all along what [he] was going to do . . . with the building. [He] was going to use it for [his] landscaping business and . . . for the nursery." However, he testified he "abandoned the plan" to cultivate nursery stock within a year after the resolution passed and ran his landscaping business from the Property until 2018, when he sold the Property to defendants pursuant to a 2018 written contract of sale.

A-0778-22

During his testimony, Holzworth conceded that paragraph thirteen of the 2018 contract for sale provided, in part:

> The property is presently used as a residential single-family home; nursery and landscape material and equipment storage facility; and agriculturally. The Seller states that to the best of his knowledge and belief the use that exists does not violate any applicable Zoning Ordinance, building code, or any other state or federal law.
>
> [(Emphasis added).]

Further, Holzworth admitted the contract of sale stated he would "obtain and pay for all inspections required by law," and he would pay up to $1,000 for a certificate of occupancy if required by the Township. The contract further included a provision that defendants had "a [sixty-]day inspection period to confirm that [their] proposed use of the [Property] in the same manner as [Holzworth wa]s in accordance with all [m]unicipal regulations." Holzworth testified he did not know if defendants ever checked with the Township to see if its regulations permitted them to operate a landscaping business on the Property.

Zaccarino also testified at trial. He stated that when he offered to buy the Property, Holzworth "mentioned that he ha[d] a resolution that [went] with the [P]roperty." Accordingly, before finalizing the contract of sale, Zaccarino and

his attorney reviewed the resolution. Zaccarino testified he interpreted the resolution as permitting Holzworth "to run a landscape business out of [the Property]," so Zaccarino concluded it would not "be an issue" for him to "use . . . the [P]roperty the way . . . Holzworth had been using it." Zaccarino also admitted he did not apply for a certificate of occupancy before the closing and did not receive one from Holzworth.

Additionally, Zaccarino stated that in September 2018, he began operating his landscaping business under the trade name, PMZ Landscaping. He testified he employed approximately thirteen to fifteen workers during the spring season and ran his business no differently than Holzworth had run his business for approximately forty years. But Zaccarino also stated he added concrete bins and other improvements to the Property after purchasing it, and employed more individuals than Holzworth did.

Following rebuttal testimony from McGroarty and one of defendants' neighbors, the testimonial hearing concluded. On March 21, 2022, the municipal court judge heard summations from counsel before issuing his decision. The judge prefaced his findings and legal conclusions by stating he had "two decisions . . . to make," specifically, "whether [defendants'] use of the [P]roperty [wa]s in violation of the . . . [O]rdinance," and if so, "whether the

A-0778-22

Township [wa]s estopped from asserting a zoning ordinance violation," considering Holzworth's prior use of the Property. As to the first inquiry, the judge found defendants guilty of the Ordinance violation, concluding that McGroarty credibly testified "with regard to his knowledge of the use of the [P]roperty," and that defendants' "use of the [P]roperty, . . . as a landscaping business[] [went] beyond the 'permitted use.'" The judge found "not only . . . Zaccarino, but also . . . Holzworth[,] testified . . . that the [P]roperty was . . . used to operate, among other things, . . . [a] landscaping business."

Next, the judge found the remuneration Holzworth "stood to gain by the sale of the [P]roperty . . . definitely affect[ed] . . . Holzworth's . . . credibility." Additionally, the judge concluded Holzworth "testified inconsistently . . . at various points . . . during the trial, as to whether . . . he thought it was okay to run his landscaping business from this [P]roperty, as opposed to just storing . . . vehicles that would be used . . . for [his] landscaping business on the [P]roperty." Further, the judge expressed concern about "what was put into the contract [of sale]" between Zaccarino and Holzworth, finding the terms of the contract "seem[ed] to be put in just for th[e] purpose[ of] get[ting] around" the issues that ultimately had to be resolved in municipal court. The judge added, "I do[ no]t believe that . . . [was] proper."

8

Lastly, after crediting McGroarty's testimony regarding when he discovered the current use of the Property, the judge found "there [wa]s no basis for [defendants'] estoppel argument, as the State had no knowledge and did not permit the operation of a landscape business on the [P]roperty." Accordingly, the judge imposed a $500 fine plus court costs for defendants' Ordinance violation, and warned that if their violation persisted, he might impose additional fines "for each day . . . there [wa]s a continued violation."

Defendants appealed from their conviction to the Law Division. On October 20, 2022, following his de novo review, Judge Ralph E. Amirata found defendants guilty of the Ordinance violation and imposed the same fine and court costs imposed by the municipal judge. In his accompanying oral opinion, Judge Amirata found the evidence, including testimony from Zaccarino, Holzworth, and McGroarty, showed the Property contained an office building and was used for conducting defendants' landscaping business. Judge Amirata also concluded defendants employed three or more workers at the Property and some employees left their personal vehicles at the Property when they performed landscaping duties offsite.

Moreover, Judge Amirata found that when Holzworth appeared before the Board in 1979, the meeting's minutes showed "no use variance was being sought

9

and . . . Holzworth [did] not seek[] to use the [P]roperty for his landscaping business." Further, the judge observed that when Holzworth sold the Property to Zaccarino in 2018, "[i]n paragraph [thirteen] of the contract, . . . Holzworth represented to . . . defendant that the Property [wa]s [being] used as a residential single[-]family home, nursery[,] and landscape material and equipment storage facility[, as well as] agriculturally." The judge also found Holzworth "provided in the contract that to the best of his knowledge and belief, the [present use of the Property] d[id] not violate any applicable zoning ordinance."

Next, Judge Amirata determined that after the 2018 contract was finalized, "neither . . . Holzworth[,] nor . . . defendant[s] ever sought a certificate of occupancy or a zoning permit to obtain a use variance allowing for commercial use" of the Property. The judge also found Zaccarino "admitted at trial that PMZ Landscaping is located at the . . . [P]roperty," and his "filings with the State," as well as "emails between . . . [Zaccarino] and the Township planner, . . . and [the] PMZ Landscaping website . . . were all entered into evidence," showing "PMZ Landscaping [wa]s located at the . . . [P]roperty." The judge added, "essentially every witness that testified on behalf of the State and . . . defendant[s] agreed that the . . . [P]roperty was being used in connection with PMZ Landscaping[,] which is owned and operated by [Zaccarino]." Based on these findings, the

10

judge concluded "the State . . . met its burden of proof [by] showing . . . defendant[s were] operating . . . PMZ . . . at the . . . [P]roperty," and the "commercial use [wa]s clearly contrary to the Township's land use ordinance [§] 550-101D[,] which provide[d] that commercial uses are not permitted in [the] RR-A zone."

Further, Judge Amirata rejected defendants' argument that their motion to dismiss should have been granted at the close of the State's case. The judge explained:

> The State certainly is entitled to the benefit of . . . all favorable inferences at the close of the State's case. . . . As previously discussed, . . . McGroarty testified . . . he visited the . . . [P]roperty on several occasions on different days and at different hours and observed multiple personal vehicles, large construction equipment, concrete material bins, and an office inside the building with three or more employees present.
>
> On this testimony and the inferences drawn therefrom, this [c]ourt finds . . . the testimony of . . . McGroarty did[,] in fact[,] satisfy the State's burden of proving defendant[s'] use of the . . . [P]roperty as nonconforming at the close of the State's case.

Next, Judge Amirata noted that "[a]t trial and on this appeal[,] defendant[s] argue[d] that even if the State . . . met its burden of proof, the Township [wa]s nevertheless equitably estopped from asserting a violation of the land use ordinance." The judge rejected this contention, explaining:

11

> The simple fact remains that neither . . . defendant[s] nor . . . Holzworth ever obtained a land use variance from a department or a representative of the Township with the authority to grant one. Accordingly, there was certainly no voluntary conduct [] which the defendant[s] could in good faith rely upon[,] such that the doctrine of equitable estoppel should apply.
>
> The [c]ourt finds that the Township is not estopped from asserting defendant[s] violated the . . . [O]rdinance. I also note when assessing . . . Holzworth's testimony[,] which the [municipal] court found lacking [in] credibility[,] . . . this [c]ourt, even giving deference to same, can see based upon the record why the [municipal c]ourt found [Holzworth's] credibility lacking.

Continuing his analysis, Judge Amirata also found the 2018 contract of sale "le[ft] out the language that the [P]roperty [wa]s being used as a landscaping business" and, instead, "mirror[ed] the limited use that was granted to the [P]roperty in . . . 1979." Further, he concluded the terms of the 1979 resolution attached to the contract of sale militated against applying the doctrine of estoppel because the resolution stated the Property was "to be used as a nursery" and "<u>for the limited use of the storage of equipment</u> that would overlap between the nursery and the landscaping business." (Emphasis added).

After Judge Amirata sentenced defendants, defense counsel asked for "clarification" regarding whether the judge "found . . . defendants guilty beyond a reasonable doubt." The judge responded:

I have. The burden of proof was agreed upon by all parties that it is beyond a reasonable doubt[,] and no one has argued that it is any other burden of proof. And considering all the elements that were contained therein, I have found . . . the State . . . satisfied the elements [of] the [violation] beyond a reasonable doubt.

Judge Amirata entered a conforming order the same day to reflect defendants' conviction and sentence.

II.

On appeal, defendants raise the following arguments:

POINT I

THE STATE MUST PROVE THE ELEMENTS OF THIS OFFENSE, EVEN THOUGH IT IS AN ALLEGED VIOLATION OF A ZONING ORDINANCE, BEYOND A REASONABLE DOUBT.

POINT II

THE MOTION TO DISMISS AT THE CLOSE OF THE STATE'S CASE SHOULD HAVE BEEN GRANTED.

POINT III

THE PROPERTY IN QUESTION HAD RECEIVED APPROVAL FOR THE CONSTRUCTION OF A 5,000 SQUARE-FOOT STORAGE BUILDING FOR THE PURPOSE OF STORING EQUIPMENT, MAINTAINING EQUIPMENT, AND STORAGE OF MATERIALS TO BE USED IN A LANDSCAPING BUSINESS.

13

POINT IV

IN THE EVENT THAT IT IS DETERMINED THAT THE PLANNING BOARD, PURSUANT TO ITS DECISION IN 1979, MADE A MISTAKE, OR THAT SOMEHOW DEFENDANT[S] AND [THEIR] PREDECESSOR VIOLATED THE APPROVAL GRANTED IN 1979, THE DOCTRINE OF EQUITABLE ESTOPPEL SHOULD BE INVOKED.

Because the "argument" set forth in Point I is simply a factual statement that was undisputed during the municipal court trial and de novo Law Division hearing, we need not address it. The balance of defendants' arguments lack merit. R. 2:11-3(e)(2). Accordingly, we affirm defendants' conviction and sentence, substantially for the reasons set forth in Judge Amirata's thoughtful and comprehensive oral opinion. We add the following brief comments.

The scope of our review of a de novo conviction in the Law Division following a municipal court appeal is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). "Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005) (citing State v. Johnson, 42 N.J. 146, 161-62 (1964)). Therefore, we consider "whether the findings made could

14

reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting Locurto, 157 N.J. at 471).

"[T]he rule of deference is more compelling" when the municipal and Law Division judges make concurrent findings. Locurto, 157 N.J. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"[M]unicipal court proceedings to prosecute violations of ordinances are essentially criminal in nature . . . ." Twp. of Pennsauken v. Schad, 160 N.J. 156, 171 (1999). Thus, as Judge Amirata acknowledged during the de novo hearing, the municipality must prove each element of the violation beyond a reasonable doubt. City of Trenton v. Calvary Apostolic Temple, Inc., 166 N.J. Super. 145, 146 (App. Div. 1979). "[D]oubt engendered by the closeness of the question should be resolved in defendant's favor." Id. at 147.

Here, it is undisputed the governing Ordinance states:

> RR-A: Rural Residential District. The purpose of this
> district is to recognize and preserve the predominant

> rural, agricultural[,] and low[-]density residential pattern of development largely brought about by an absence of public sewer and water services.
>
> (1) Permitted principal uses shall be as follows:
>
> > (a) Detached dwellings.
> >
> > (b) Farms and farm buildings.
> >
> > (c) Public uses.
> >
> > (d) Antennas for wireless telecommunication services.
>
> [§ 550-101D of the Township Code.]

Thus, as McGroarty confirmed at trial, commercial uses, such as defendants' landscaping business, are not permitted in the RR-A zone, where the Property is located. Accordingly, based on the plain language of the Ordinance and the significant proofs adduced at trial regarding defendants' use of the Property for their landscaping business, we are convinced Judge Amirata correctly found the State proved beyond a reasonable doubt that defendants violated the Ordinance.

Similarly, we reject defendants' argument that their motion to dismiss should have been granted after the State rested. We review a trial court's decision to deny a motion for acquittal de novo. State v. Williams, 218 N.J. 576, 593-94 (2014) (citing State v. Bunch, 180 N.J. 534, 548-49 (2004)). When a motion is made at the close of the State's case, the trial judge must deny the

16

motion if "viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all" reasonable inferences, "a reasonable jury could find guilt . . . beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-59 (1967); see also State v. Jones, 242 N.J. 156, 168 (2020).

Under Rule 3:18-1, a court "is not concerned with the worth, nature, or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

Governed by these standards, we are persuaded Judge Amirata properly considered the State's evidence at the conclusion of its case-in-chief—including McGroarty's testimony about his multiple inspections of the Property—and the judge appropriately afforded the State the benefit of all reasonable inferences flowing from its proofs, consistent with the Reyes standard. Thus, we have no reason to disturb the denial of defendants' motion to dismiss.

Finally, we disagree with defendants' contention that Judge Amirata erred in rejecting their equitable estoppel argument. "The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with

good reason and in good faith has relied upon such conduct." Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J. Super. 420, 436 (App. Div. 2002) (omission in original) (quoting Fraternal Ord. of Police v. Bd. of Trs., Police & Firemen's Ret. Sys., 340 N.J. Super. 473, 484-85 (App. Div. 2001)). The doctrine may be invoked against a municipality "where the interests of justice, morality[,] and common fairness clearly dictate that course." Id. at 436 (quoting Ranchlands Inc. v. Twp. of Stafford, 305 N.J. Super. 528, 538 (App. Div. 1997), aff'd, 156 N.J. 443 (1998)). However, the doctrine is "rarely invoked against a governmental entity, particularly when estoppel would interfere with essential government functions." Ranchlands, 305 N.J. Super. at 538 (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987)).

"[A] party asserting equitable estoppel may rely upon 'conduct, inaction, representation of the actor, misrepresentation, silence, or omission.'" Ridge Chevrolet-Oldsmobile, Inc. v. Scarano, 238 N.J. Super. 149, 154 (App. Div. 1990) (quoting Fairken Assoc. v. Hutchin, 223 N.J. Super. 274, 280 (Law Div. 1987)). But "[p]rior tolerance of a use in violation of a zoning ordinance . . . will not estop the municipality from later enforcing the ordinance." Universal Holding Co. v. Twp. of N. Bergen, 55 N.J. Super. 103, 112 (App. Div. 1959);

18

see also E. Wind Realty, Ltd. v. Bd. of Adjustment, 218 N.J. Super. 412, 416-17 (App. Div. 1987).

Guided by these principles, we are satisfied Judge Amirata correctly found there was "no voluntary conduct" by the Township, " which . . . defendant[s] could in good faith rely upon[,] such that the doctrine of equitable estoppel should apply."

To the extent we have not addressed defendants' remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-0778-22