702 A.2d 1325

RANCHLANDS, INC., BERKELEY HOLDING, INC., AND PINE-LANDS RECYCLING, INC., NEW JERSEY CORPORATIONS, PLAINTIFFS–RESPONDENTS, v. TOWNSHIP OF STAFFORD, STAFFORD TOWNSHIP PLANNING BOARD, AND THE INDUSTRIAL COMMISSION OF THE TOWNSHIP OF STAFFORD, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 16, 1997—Decided November 20, 1997.

Before D'ANNUNZIO, A.A. RODRÍGUEZ and COBURN, JJ.

*Thomas E. Monahan* argued the cause for appellant Township of Stafford and Industrial Commission of the Township of Stafford (*Gilmore & Monahan,* attorneys; *Mr. Monahan,* of counsel; *Jean L. Cipriani,* on the brief).

*Bradley W. Henson, Sr.* argued the cause for appellant Township of Stafford Planning Board (*Henson & Hodgson,* attorneys; *Mr. Henson,* on the brief).

*Lewis Goldshore* argued the cause for respondents (*Goldshore & Wolf* attorneys; *Mr. Goldshore* of counsel; *Robert J. Cash,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The Township of Stafford (Township) appeals from a judgment dated January 30, 1997 which states that "Judgment is entered in [favor] of the Plaintiffs pursuant to the written Decision of the Court, dated January 16, 1997." In the referenced decision, the court determined that the Township was estopped from refusing to convey certain lands to the Township's Industrial Commission (Commission). The court stated that the "municipality shall cause the appropriate resolutions and ordinances, if required, to be adopted and that the premises in question be conveyed to the Industrial Commission for subsequent conveyance to the plaintiffs."

In its decision, the court appears to have ruled that the Township was not bound in law to transfer title to the Commission; thus, it relied on a theory of estoppel. Plaintiffs have filed a cross-appeal "solely as to the ruling, in favor of Defendant,

Township of Stafford, that it is not legally bound to convey Township owned property" to the Commission.

This dispute arises out of a contract between plaintiffs, Ranchlands, Inc. and Berkeley Holding, Inc., as buyers, and the Commission, as seller. The buyers intended to use the land as a center for the recycling of tree stumps, asphalt and concrete, to be operated by plaintiff, Pinelands Recycling, Inc. The Commission did not own the land; it was owned by the Township, which was not a party to the contract. The last paragraph of the contract stated:

31. CONTINGENCY UPON SELLER OBTAINING TITLE. Performance of this Contract by the Seller is contingent upon the Seller obtaining clear title to the subject property from the Township of Stafford.

The Township's governing body adopted a resolution on August 6, 1996 determining that it would not transfer title to the Commission. The resolution mentioned as a reason environmental concerns raised by the Township's Environmental Commission. The Environmental Commission expressed those concerns in a letter dated February 2, 1996. Those concerns included air quality degradation because of dust, estimated to be twenty-two tons of dust per day; noise; storm water runoff; aesthetics; and traffic concerns due to seventy to ninety "tandem trailers per day."

Plaintiffs contend that the contract with the Commission bound the Township's governing body because of the mayor's participation, especially the mayor's conditional veto of the contract pursuant to *N.J.S.A.* 40:55B-8.1.

The statute authorizing the creation of municipal industrial commissions, *N.J.S.A.* 40:55B-1 to 10, was adopted in 1936. A member of a municipal governing body may not be a member of a commission, but the mayor "shall be ex officio a member thereof, but he shall not have voting privileges." *N.J.S.A.* 40:55B-5. A commission has the power to sue and be sued and to enter into contracts. *N.J.S.A.* 40:55B-7a and e. It also has the power "[t]o solicit the several industries to purchase or lease the vacant lands and property of or in the municipality" and "[t]o acquire title to

vacant land owned by the municipality for the purpose of resale or lease to industries. . . ." *N.J.S.A.* 40:55B–8e and g.

*N.J.S.A.* 40:55B–8.1 requires a commission to notify the mayor of any contract for the sale of real estate. The mayor has the power to veto the transaction, which must be exercised within ten days after receiving the notice. *Ibid.* One of the factors a mayor must consider with regard to the veto power is whether "the action is environmentally compatible with the community." *N.J.S.A.* 40:55B–8.1b.

Most significant to the present case is *N.J.S.A.* 40:55B–10. It provides:

> No commission created under the authority of this chapter shall have power to pledge the credit of the municipality by which it is created, or of any other municipality, or of the State of New Jersey, or to create any debt against or in any manner act as the agent of such municipality, or of the State of New Jersey.
> . . . .
> The creation of a commission by a municipality shall not be deemed to limit in any manner the municipality's right to deal with its vacant lands, or to sell or lease the same, independently of such commission, as heretofore, but the powers conferred upon such municipality and commission by this chapter shall be in addition to any rights or powers now possessed by such municipality with reference to its vacant lands or other properties.

■ Plaintiffs' contract with the Commission did not bind the Township. As indicated, the Commission is not the Township's agent, *N.J.S.A.* 40:55B–10, and the creation of the Commission did not "limit in any manner the municipality's right to deal with its vacant lands." *Ibid. N.J.S.A.* 40A:12–13 carefully controls municipal authority to sell its lands not needed for public use. *N.J.S.A.* 40A:12–13(a) authorizes municipalities to sell such lands "[b]y open public sale at auction to the highest bidder" and establishes procedures for such a sale. *N.J.S.A.* 40A:12–13(b)(1), however, authorizes a municipality to sell lands at private sale "to any political subdivision, agency, department, commission, board or body corporate and politic of the State of New Jersey."[1] *Ibid.* A

---

[1] Thus, the device used in the present case involving a sale to plaintiffs by the Commission after it acquired title from the Township avoided the public auction

municipality may effect such a sale only by ordinance. *Ibid.* The Township did not adopt an ordinance authorizing the sale to plaintiffs or ratifying plaintiffs' contract with the Commission.

The mayor's participation through the exercise of a conditional veto under *N.J.S.A.* 40:55B–8.1 does not affect our analysis. Even if we assume that the plaintiffs complied with the mayor's conditions, the mayor had only one vote on the governing body and cannot bind it. Accordingly, the trial court's determination that the contract did not bind the Township was correct.

We reverse, however, the judgment that the Township is estopped from refusing to convey the lands to the Commission.

■ Ranchlands' principal shareholders are John Campbell and Dean Mabie, who both testified at trial. Mabie is also the principal shareholder of Berkeley Holding Company. Campbell, a real estate broker and developer, stated that he had been working on real estate projects with Dean Mabie, a broker and contractor, for the past ten years. In their pursuit of the recycling site, Campbell stated that Mabie was to "deal with the . . . divisions of government" and he was to be responsible for "the mechanics of putting together exhibits or permits or meetings [and] dealing with experts. . . ."

Campbell testified that in June of 1994, Ranchlands applied to the Zoning Board of Stafford Township for a special reasons variance to permit a wood recycling center to be located on land adjacent to Route 72 which was owned by Ranchlands. The general public, particularly the residents of the retirement village across the street from the proposed site, opposed the application. The Mayor of the Township, Carl Block, testified that he also believed that the site was inappropriate. After meeting with the Zoning Board, Mabie and Campbell were advised that the Stafford Environmental Commission recommended that such a recycling

requirement in *N.J.S.A.* 40A:12–13(a) because that section of the statute does not apply to sales to the Commission.

operation be located in the "Business Park" of the Township, an area set aside for industry and business which includes the lands at issue in this case.

Dean Mabie initiated a meeting with Mayor Block for the first time at some point between June and August of 1994 to discuss an alternate site for the recycling center. Pursuant to their discussion, Ranchlands withdrew its application for a variance for the Route 72 location. Mayor Block testified that at this initial meeting, he directed Mabie to contact the Commission because

> he had to go through those people to purchase. That that's the way the Township council had wanted the ... I processed the work. And, as a matter of fact, the council was very emphatic when they setup that this is part commission that they want to have a—I'd like to describe it as a fire wall. The ultimate disposition of the property needed the majority voted council to transfer the title to the Business Park Commission.
>
> And, then, in fact, the Business Park Commission could then close. But, the Business Park Commission was, if you will, the marketing arm to promote the Park and to negotiate contracts ...
>
> I also explained to him which I thought was very important that he understood that in no way did any of these obligation [sic] and what we fully expected was a complete review of every and all local, county and state approvals.

Dean Mabie testified that he met with Mayor Block between twelve and fifteen times from August to December 1994 to confer about the project. On two occasions during their discussions, Mayor Block authorized Mabie to contact Township professionals who could address his questions: John Walsh, the Township Engineer, regarding the topography of the property, and Rick Hall, the appraiser for the Township, regarding a discount in price if Ranchlands were to purchase several lots in the Business Park. Mayor Block also testified that at one point, Mabie asked if Ranchlands could build the roads required in the Business Park in lieu of part of the purchase price for the land; Mayor Block told Mabie that he would "run it [the proposal] by the Council because I couldn't do anything alone because I also needed their vote to transfer the title." The Mayor asserted that "there was no other reason to run anything by the Council because the ... Commission were the ones ultimately to make a decision on the contract;" he stated that he informed Mabie of this fact. Mayor Block

indicated that when he approached the Council with this concept, in a general sense without identifying the developer involved, they expressed no opposition to the idea.

Mayor Block maintained that throughout his contact with Mabie, he reiterated that Mabie would need to obtain all necessary local and state approvals and permits to go forward with the project. According to Mayor Block, Mabie "consistently said . . . he was a developer and that he knew what he had to get in the way of permits and approvals and that he would take care of that during the normal course of approvals to the local county and state agencies." Furthermore, Mayor Block stated that he repeatedly "made it clear" to Mabie "that the transfer of the property still had to be accomplished by the council. That, in fact, there was [sic] two entities here and the ownership always resided in the Township's name. No matter what happened, ultimately the Township would have to pass title."

Campbell testified that a meeting was held on December 1, 1994, at Mayor Block's direction, to bring together Ranchlands' people and the Township professionals to see if "anyone had a glaring problem" with Ranchlands' proposal. No "particular site or specific lot [were] in mind at the time." Campbell stated that both he and Mabie were present, as well as an environmental expert for Ranchlands. In attendance from the Township were John Walsh, Township Engineer; Martha Kremer, Zoning Officer of the Township; and one of the Township's attorneys. According to Campbell, "no red flags" were raised at this meeting.

Attorneys for Ranchlands and the Commission prepared the contract, which was signed on October 2, 1995 at a Commission meeting by Dean Mabie, acting for Ranchlands, and Stuart Ducker, for the Commission.

Stuart Ducker, a real estate broker, testified as chairman of the Commission. He stated that the provision in the contract entitled "Contingency Upon Seller Obtaining Title," Paragraph 31, is standard in the Commission's contracts. He explained his understanding of how this provision would be carried out:

Generally, when the closing is set in coordination with the closing would be—with the buyer the deed is prepared by our attorney transferring title from the township to the ... Commission to the buyer and all of this takes place at the same closing.

At trial, Dr. Fred Seeber testified as the member of the Township Council who served as liaison to the Commission. He noted that he saw the contract between Ranchlands and defendants after it was signed. Further, he was part of the Council when it voted to prohibit the transfer of title of the land from the Township to the Commission, based primarily on their environmental concerns regarding the proposed recycling center. Upon questioning by the court, he stated that no one from Ranchlands ever met with anyone from the Council to explain the proposal or to get input on it.

Mayor Block testified that in exercising his veto power over this contract, he proposed three amendments to the contract in the form of a rider to the contract; these changes were transmitted to plaintiffs in an October 13, 1995 letter from the Township's and Commission's attorney. This rider included: (1) an agreement by the buyer to provide an additional assessment to the Township for off-tract improvements; (2) a provision whereby the buyer agreed to submit its plan proposal to the Stafford Environmental Commission for its review and comments and a statement that they would comply with those recommendations "to the extent feasible"; and (3) an amendment to the contract regarding the division of the commission on the sale between the realtors and the Township. Plaintiffs executed the October 13 letter, indicating their acceptance of the additional terms.

Campbell stated that pursuant to the contract, plaintiffs sought the necessary approvals and permits for the project. They obtained a "Certificate of Filing" from the Pinelands Commission that they were in compliance with Pinelands' rules and regulations and allowing them to make an application before the local boards. Plaintiffs went before Ocean County's Solid Waste Advisory Council ("SWAC") to get its approval for the recycling center before incurring the expense involved in getting site plan approval from the Stafford Township Planning Board. Plaintiffs requested inclu-

sion of their recycling center in the Solid Waste Management Plan for Ocean County and applied to the Environmental Commission, the Department of Environmental Protection (DEP), and the Stafford Township Planning Board. Campbell noted that they were granted inclusion in Ocean County's Solid Waste Management Plan and that they obtained a Class B recycling permit from the DEP. *Ibid.* They did not get site plan approval from the Planning Board.

Campbell indicated that Plaintiffs complied with the Stafford Township Environmental Commission and participated in a number of hearings from January to April 1996. The Environmental Commission produced a final report of its concerns on May 31, 1996, indicating that plaintiffs were not able to satisfy its concerns regarding anticipated environmental impact on the site.

Martha Kremer, the Zoning Officer for Stafford Township, testified for the defense at the hearing. She stated that in November of 1995, Mabie had asked her for a letter confirming that the recycling center was a use permitted within the Business Park. She responded with a letter dated November 15, 1995, in which she stated that based on "the limited information [Ranchlands] presented" regarding whether the activities would create any significant hazard, the proposed use "could not be considered a permitted use within the Industrial Zone at this time." She advised Mabie that he had several options: (1) to apply to the Zoning Board of Adjustment for an interpretation of the ordinance regulating the Industrial Zone; (2) to make a formal application to the Zoning Board for a use variance and subsequent site plan approval; or (3) to appeal her decision to the Zoning Board. *Ibid.*

In a letter to Mabie dated November 20, 1995, Kremer asked Mabie to supply more information about the project and to detail plaintiffs' efforts at compliance with other federal, state and county regulatory agencies; with this information, she would attend the next meeting of the Zoning Board and inquire whether, in the Board's opinion, the proposed use satisfied the applicable township codes. Kremer testified that Mabie did not respond to

this letter; rather, plaintiffs' next action was to make an application to the Stafford Township Planning Board on January 26, 1996. In addition, on May 29, 1996, plaintiffs renewed their application to the Zoning Board for a recycling site on the Route 72 property they own.

In a letter dated July 31, 1996, Plaintiffs' attorneys informed Mayor Block and the Township Council of their position that Plaintiffs had "obtained all necessary approvals and permits from all applicable governmental agencies." They noted that the "only remaining issue pursuant to the Contract" was for the Planning Board to establish the amount of the off-tract improvements required by the October 13, 1995 amendments. *Ibid.* Defendants' attorneys responded in an August 2, 1996 letter, stating that plaintiffs' application had "not received any municipal approvals at this time." Further, the letter maintained that the Stafford Zoning Officer had determined that the proposed use required a use variance, which had to be pursued by plaintiffs, and that plaintiffs would then need to obtain site plan approval. *Ibid.* Also of note, the letter reiterated the Environmental Commission's concerns and the fact that the Contract was "contingent on compliance with [its] recommendations."

 Equitable principles of estoppel may be applied against a municipality "where the interests of justice, morality and common fairness clearly dictate that course." *Gruber v. Mayor and Tp. Comm. of Raritan Tp.,* 39 *N.J.* 1, 13, 186 *A.*2d 489 (1962); *see also Summer Cottagers' Ass'n v. City of Cape May,* 19 *N.J.* 493, 504, 117 *A.*2d 585 (1955); *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205, 101 *A.*2d 849 (1954). However, the doctrine is "rarely invoked against a governmental entity, particularly when estoppel would interfere with essential governmental functions." *O'Malley v. Department of Energy,* 109 *N.J.* 309, 316, 537 *A.*2d 647 (1987) (citations omitted). Equitable estoppel is applied "only in very compelling circumstances," *Township of Fairfield v. Likanchuk's, Inc.,* 274 *N.J.Super.* 320, 331, 644 *A.*2d 120 (App.Div.1994) (citations omitted), and the burden of proving a claim of equitable

estoppel is on the plaintiff. *Palatine I v. Planning Bd.*, 133 *N.J.* 546, 562, 628 *A.*2d 321 (1993).

We are persuaded that the circumstances in the present case did not justify an estoppel against the Township. Plaintiffs had contract rights *vis-a-vis* the Commission, but they were subject to a variety of approval contingencies as well as the contingency requiring the transfer of title from the Township. Looking at the facts most favorably from plaintiff's perspective, plaintiffs received encouragement and direction from the mayor. Plaintiffs, however, were charged with the knowledge that transfer of title required an ordinance with all the procedural requirements of the legislative process, including publication, public hearing and a majority vote of the governing body. *N.J.S.A.* 40:49–2. Thus, plaintiffs had to be aware that satisfaction of the title contingency had to run the gauntlet of the political/legislative process. The risk of an adverse legislative vote was inherent in plaintiffs' contract with an entity that did not own the land. While that procedure may have avoided a public auction, as mandated in *N.J.S.A.* 40A:12–13(a), plaintiffs had no enforceable expectation that the full governing body would adopt the required ordinance. *Cf. Palatine I v. Planning Bd., supra,* 133 *N.J.* at 563, 628 *A.*2d 321 (holding that "only *justified* and *reasonable* reliance warrant the application of equitable estoppel").

Moreover, plaintiffs were aware that the community had environmental concerns regarding the recycling center. Those concerns had been expressed in connection with plaintiffs' variance application for the Route 72 site and by the mayor as part of his conditional veto.

We also observe that developers in New Jersey frequently expend substantial effort and money in the pursuit of projects that do not receive all necessary governmental approvals. *See e.g., SMB Assocs. v. New Jersey Dep't. of Envtl. Prot.,* 264 *N.J.Super.* 38, 624 *A.*2d 14 (App.Div.1993), *aff'd,* 137 *N.J.* 58, 644 *A.*2d 558 (1994). Those facts, standing alone, do not warrant application of principles of estoppel against government.

Finally, the present case is factually distinguishable from other cases which applied principles of estoppel. In *Gruber, supra,* the governing body adopted a resolution approving a subdivision for residential development before the municipality had established a planning board and adopted a zoning ordinance. The zoning ordinance, placing the tract in a light industry zone which prohibited residential development, was adopted after the developer had built four houses and installed other improvements. *Gruber, supra,* 39 *N.J.* at 4–8, 186 *A.*2d 489.

*Summer Cottagers' Ass'n, supra,* involved the sale of municipal land in violation of statutory procedures. An attempt to void the sale after the construction of a motel had almost been completed was rejected on grounds of estoppel. *Summer Cottagers' Ass'n, supra,* 19 *N.J.* at 506, 117 *A.*2d 585. The present case does not involve such egregious facts. Moreover, the governing body, unlike in *Gruber,* and *Summer Cottagers' Ass'n,* took no official action on which plaintiff reasonably could have relied. Only the Commission took official action and, as we previously indicated, the Commission's action cannot bind the governing body. *See N.J.S.A.* 40:55B–10.

The trial court also determined that approvals under the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 *et seq.,* preempted the Township's zoning and planning regulations and, therefore, it rejected the Township's argument that plaintiffs had to get municipal land development approvals. The Township and the planning board contend that in this respect the court erred. In light of our determination that the Township is not estopped from withholding title to the lands, it is unnecessary to address this issue.

The judgment is reversed.[2]

---

[2] Plaintiffs' "cross-appeal" from the trial court's determination that the Township was not legally bound to convey the property to the Commission is dismissed on the merits.