**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1075-18T2

4 WATCHUNG AVENUE, LLC,

 Plaintiff-Respondent/
Cross-Appellant,

v.

THE ZONING BOARD OF
ADJUSTMENT OF THE BOROUGH
OF CHATHAM and THE BOROUGH
OF CHATHAM,

 Defendants-Appellants/
Cross-Respondents.

_____

   Argued December 16, 2019 – Decided January 31, 2020

   Before Judges Messano and Ostrer.

   On appeal from the Superior Court of New Jersey, Law
   Division, Morris County, Docket No. L-1350-17.

   James L. Lott, Jr. and Patrick J. Dwyer argued the cause
   for appellants/cross-respondents (Riker, Danzig,
   Scherer, Hyland & Perretti, LLP, attorneys for Borough
   of Chatham; Nusbaum Stein Goldstein Bronstein &
   Kron, attorneys for Zoning Board of Adjustment of the
   Borough of Chatham; James L. Lott, Jr. and Patrick J.

Dwyer, of counsel and on the joint briefs; Diane N. Hickey, on the joint briefs).

Robert L. Podvey argued the cause for respondent/cross-appellant (Connell Foley, LLP, attorneys; Robert L. Podvey, of counsel and on the brief; John W. Dalo, on the briefs).

PER CURIAM

Plaintiff 4 Watchung Avenue, LLC, owns property in the Borough of Chatham upon which it stores vehicles for two affiliated car dealerships located in a neighboring municipality. Plaintiff began leasing the property in 1992 and eventually purchased it in 2002 from Otto Schmidt, Jr. At the time, the property contained a single-family dwelling and a gas station. Schmidt stored automobiles on the property, and in connection with the sale to plaintiff, he certified that the property had been used for "the purpose of storage of vehicles" since 1968.

In 2013, Chatham amended the land use element of its master plan pursuant to a report authored by Dr. Susan G. Blickstein, a professional planner. The plan envisioned changes in the borough's M-1 and M-3 zoning districts to create a proposed "Gateway to Chatham," an overlay zoning plan intended, in part, to repurpose former sites of "historic manufacturing processes." Amendments adopted to the general provisions of Chatham's zoning ordinance

prohibited all uses not permitted as a principal, accessory, or conditional use in any particular zone.

Plaintiff's property is located in the M-1 zone, and outdoor vehicle storage is not a permitted use. Beginning in June 2013, Chatham's borough engineer and zoning officer, Vincent DeNave, began inquiries into whether plaintiff had obtained approvals to permit parking of vehicles on the property. These culminated in a September 2014 notice of violation and order to abate the parking and storing of cars on the property. Plaintiff filed an application with the Zoning Board of Adjustment (the Board) appealing the violation, or, alternatively, seeking a use variance and site plan approval to permit its continued parking of cars on the property.

Apparently due to the press of other applications, a hearing was not scheduled until August 24, 2016. On the day of the hearing, the Board's counsel sent plaintiff's counsel a copy of an unsigned 1971 Board resolution approving a variance application Schmidt had filed.[1] The approval was conditioned on the

---

[1] The 1971 application characterized the parking of automobiles as a permitted use under then-current zoning regulations, subject only to erection of a fence. The 1971 Board resolution which was subsequently produced, however, states that the application sought a use variance, since the proposed use was "a 'similar use'" to those permitted in the zone. As we explain, nonetheless, plaintiff re-

erection of a fence around the property, and it limited the number of vehicles Schmidt could park to 125. As a result, no substantive presentation on the application took place, as plaintiff considered its options, including amending the application to request a certificate of nonconformity. See N.J.S.A. 40:55D-68 (providing "any . . . person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming").

At the next scheduled meeting, plaintiff's counsel told the Board that his client intended to challenge the violation, as opposed to seeking a variance, by demonstrating it was entitled to a certificate of nonconformity.[2] DeNave testified about his efforts to ascertain whether plaintiff's and other properties in the M-1 and M-3 zones had received appropriate municipal approvals in the past. He identified a 1971 violation issued to Schmidt because the parking of vehicles was not a permitted use at the time and surmised that this citation prompted

asserted before the Board that in 1971, the parking of automobiles was permitted in the zone subject only to fencing.

[2] At one point, plaintiff's counsel characterized the application as a "moving target" because of the additional information regarding Schmidt's 1971 application.

4

Schmidt's application to the Board for a variance. DeNave checked the records for a neighboring property and found a 1970 Board resolution denying a variance to park seventy vehicles on the property.

The precursor to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, was the Municipal Planning Act (MPA), 40:55-1.1 to -1.42, which was in effect at the time of Schmidt's application. Under its terms, the Board's favorable action on a variance application was only a recommendation to the municipal governing body for approval. See N.J.S.A. 40:55-39(d) (1975). If the governing body failed to act, its inaction was deemed a denial of the variance. See N.J.S.A. 40:55-39.1 (1975) (providing that the governing body's failure to take action on the board's recommendation granting a variance within sixty days "shall be deemed to have been" a disapproval of the variance "as though a resolution to that effect had been adopted"). The parties' review of municipal records, partially in response to plaintiff's record request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, produced no documentary proof that Chatham's borough council ever approved Schmidt's variance application. DeNave surmised that, despite the unsigned 1971 Board resolution, Schmidt's use variance was never approved.

Plaintiff's expert engineer and planner also testified, offering historic aerial photographs of the site and interpretation of the ordinance at the time of Schmidt's application. The planner opined that in 1971, outdoor vehicle storage was a permitted conditional use, subject to the Board's approval. He opined that vehicle storage was prohibited for the first time by a 1979 amendment. The expert acknowledged, however, that plaintiff's current use of the property far exceeded the 125 vehicles permitted by the 1971 resolution.

Dr. Blickstein, who also served as the Board's staff planner, was present and significantly participated in the proceedings. She implicitly accepted DeNave's opinion that the pre-1979 ordinance did not permit vehicle storage as a conditional use in the zone, and that Schmidt's 1971 application was for a use variance. At one point in the proceedings, Dr. Blickstein referred to plaintiff's expert's interpretation as "absurd."

At the next Board hearing, plaintiff produced four 1971 articles from a local community newspaper. They indicated the Board had approved Schmidt's application and subsequently two other variance applications — filed on behalf of Louis Rillo and Carmen C. Carlone — for vehicle storage on properties across the street from Schmidt. Later articles reported the council's approval of the Rillo and Carlone applications — for the parking of thirty and sixty cars

6

respectively — as similar to an application approved the month before, but no article explicitly mentioned action by the council on Schmidt's application. The balance of the Board meeting included the testimony of plaintiff's planner regarding the proposed site plan, which anticipated parking 282 cars on the property. Two more hearings followed, at which plaintiff's principal and environmental expert testified.

At the Board's March 22, 2017 meeting, its chairman set forth the procedure to be followed in voting on plaintiff's application. With the consent of plaintiff's counsel, the chairman proposed that the Board first vote on plaintiff's appeal of the violation; if plaintiff's appeal was denied, then the Board would consider plaintiff's application for a new use variance. The Board unanimously denied plaintiff's appeal from the zoning officer's violation. It concluded that Schmidt was required to obtain a use variance in 1971 because the storage of automobiles was not a conditional use permitted in the zone under the prior ordinance, and that the property had not been granted a use variance in 1971. The Board then voted to deny plaintiff a use variance. It passed a memorializing resolution on April 26, 2017.

Plaintiff filed a complaint in lieu of prerogative writs alleging the Board's actions were "arbitrary, capricious and unreasonable[.]" Plaintiff also asked the

court to correct the Board's erroneous interpretation of the zoning ordinance, presumably the one in effect in 1971. Plaintiff asserted the Board's action resulted in a "taking," and it sought compensatory damages. Lastly, plaintiff alleged Chatham was estopped from taking any enforcement action for alleged violations of the zoning regulations given its failure to do so for more than forty years.

The Law Division judge heard oral argument, after which he permitted plaintiff additional time to file another OPRA request or otherwise attempt to locate additional information regarding Schmidt's 1971 application and its aftermath. The OPRA request yielded the minutes of the Board's August 1971 meeting, at which it passed a memorializing resolution approving Schmidt's use variance. At the same 1971 meeting, the Board discussed the Rillo and Carlone applications without taking a vote. The minutes of the Board's October 1971 meeting contained approval of the Rillo and Carlone variances, and the December 1971 minutes of the borough council demonstrated approval of Rillo's and Carlone's variances. However, despite a search of all borough council records, there was nothing to indicate the council had ever approved or disapproved Schmidt's variance.

The parties entered into a consent order, which the judge executed and filed. By its terms, the order remanded the matter to the Board for the limited purpose of considering:

> (i) The minutes of the Chatham Borough Zoning Board's meeting held on the August 4, 1971[,] regarding the application by Otto Schmidt;
>
> (ii) The minutes of the Board's meeting held on August 4, 1971[,] and its reference to two similar applications by different owners in the M-1 zone (Carlone and Rillo) to allow the same use, namely, outdoor storage of automobiles;
>
> (iii) That the Notice of Violation and Order to Abate issued to [plaintiff] on September 19, 2014[,] was the only Notice of Violation issued by the Borough of Chatham to [plaintiff] regarding its use of the property; and
>
> (iv) Such other matters as the Board or counsel for the parties may raise but only to the extent the Board finds them relevant.

Following two sessions, the Board again voted to deny plaintiff's appeal from the violation and its application for a variance. In its memorializing resolution, the Board considered the additional information specified in the remand order. It rejected plaintiff's argument that the Board's recommendation and the borough council's approval in 1971 of the Rillo and Carlone applications for use variances implied the council approved Schmidt's application. The

9

Board noted that Schmidt sought to store more vehicles on his property than Rillo and Carlone intended to store on their two properties combined. The resolution also addressed plaintiff's request for a use variance under N.J.S.A. 40:55D-70(d)(1) and explained the Board's conclusion that plaintiff had not proven the positive or negative criteria under the statute.

The parties again appeared before the Law Division judge for further argument. Plaintiff particularly emphasized the Board's failure to address Chatham's forty-year lack of enforcement activities as implicit proof that Schmidt obtained the variance in 1971, as well as justifying "equitable estoppel" of further prosecution of the violation. Plaintiff also asserted that Dr. Blickstein's involvement as both author of Chatham's master plan revision report and the Board's staff planner presented a conflict of interest that tainted the proceedings.

The judge's August 30, 2018 order granted plaintiff partial summary judgment.[3] In a lengthy written decision, the judge concluded that Dr.

---

[3] The order also remanded the matter to the Board for "reconsideration of a d(2) variance." See N.J.S.A. 40:55D-70(d)(2). The statute permits the grant of a variance "to permit . . . an expansion of a nonconforming use[.]" In his opinion following defendants' motion for reconsideration, the judge clarified that the remand was for the Board's consideration of plaintiff's request for a d(1) use variance.

Blickstein's interpretation of the pre-79 ordinance and her involvement with plaintiff's matter was not tainted by a conflict of interest. Recounting the documentary evidence regarding Schmidt's 1971 variance application, the judge reasoned, "[T]he question before the Court becomes: who gets the inference in the absence of an official record?" He concluded "the substantial evidence in the record supports a finding that the 1971 Schmidt application was approved by the [b]orough [c]ouncil, and that [p]laintiff's predecessor-in-interest was granted a use variance." The judge concluded "the Board acted in an arbitrary and capricious manner as it insufficiently explained its reasoning and failed to give due consideration to the strong circumstantial evidence[.]" He granted partial judgment to plaintiff, and as a result, declined to reach the estoppel issue.

---

At oral argument, we asked the parties to explain the scope of the intended remand contained in this August order, and a September 4, 2018 order that ostensibly made ministerial corrections to the August order. We questioned whether the appeal was truly final as to all issues. The parties advised that the orders did not intend, nor did the parties anticipate, any further action before the Board, and that the orders reflected the intended scope of the court's earlier remand to the Board that actually preceded and was completed before entry of the August order. The parties advised that depending on the outcome of this appeal, Chatham reserved its right to enforce the 125-car limit in the 1971 Schmidt variance.

The Board moved for reconsideration.[4] It argued that under the MPA, the borough council's failure to approve Schmidt's use variance was tantamount to its denial. Therefore, the judge should have deferred to the Board's decision that plaintiff produced insufficient evidence that Schmidt actually obtained a variance.[5]

Calling the Board's actions on remand a "cursory review," the judge concluded "the Board failed to consider the newly discovered evidence

---

[4] The record does not include the motion for reconsideration or any supporting documents, nor does it include plaintiff's opposition. There is no transcript provided, so we assume there was no oral argument on the motion. Our review is limited to the judge's written decision denying in part and granting in part defendants' motion.

[5] Although the judge said the Board failed initially to raise this argument, he considered it anyway. Citing two cases decided under the MPA, the judge concluded: "Substantial evidence supported [my] determination, and case law from the era tends to indicate that a failure to take action (as opposed to a tie vote resulting in a 'statutory denial') was arbitrary, capricious, and unreasonable." If the judge implied a governing body's failure to take action under the MPA, and Chatham's failure to act on the Schmidt application, was per se arbitrary, capricious, and unreasonable, we respectfully disagree. See Lizak v. Faria, 96 N.J. 482, 498 (1984) (holding only that under the MPA, "no presumption of reasonableness attached to statutory denial resulting from inaction" (citing Snyder-Westerlind Corp. v. Mayor & Council of Atlantic Highlands, 134 N.J. Super. 459, 461 (App. Div. 1975))).

regarding the 1971 Schmidt [a]pplication[.]"[6] The judge entered an order denying the Board's reconsideration motion on its merits.

Before us, the Board and Chatham argue the judge erred by substituting his assessment of the evidence for the Board's judgment of that evidence. Plaintiff counters the argument, claiming the judge properly determined the Board's conclusion that Schmidt had not obtained a use variance in 1971 was not supported by substantial, credible evidence and, therefore, its decision was arbitrary, capricious, and unreasonable.

Plaintiff also filed a cross-appeal. It asserts that Dr. Blickstein "was a conflicted party" and her participation and advice during the initial hearings before the Board was prejudicial to plaintiff's interests. It also asserts that Chatham's "inaction and actions" subject its prosecution of any zoning violation to the doctrine of "municipal estoppel."

---

[6] Lastly, with the parties' assent, the judge determined that he had erred in remanding the matter for the Board's consideration of a d(2) variance. In this regard, the judge cited our decision in Puleio v. N. Brunswick Twp. Bd. of Adjustment, where we said that "once a variance is granted[,]" the use does not become "'permitted' . . . under the ordinance. However, a use permitted by variance is also not a nonconforming use." 375 N.J. Super. 613, 619 (App. Div. 2005).

Having considered these arguments in light of the record and applicable legal standards, we reverse in part, affirm in part, and remand in part for further proceedings consistent with this opinion.

I.

We first consider whether the Board's determination that Schmidt had not obtained a use variance in 1971 was arbitrary, capricious, and unreasonable. Resolution of the issue invokes well-known standards of judicial review and restraint.

We review the trial court's decision considering the same standards that the trial court must apply. Fallone Props., LLC v. Bethlehem Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004) (citing Fred McDowell, Inc. v. Bd. of Adjustment of Wall, 334 N.J. Super. 201, 212 (App. Div. 2000)). "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)).

A local board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear

14

abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002)). "Because a [board's] actions are presumed valid, the party 'attacking such action [has] the burden of proving otherwise.'" Northgate Condo. Ass'n v. Borough of Hillsdale Planning Bd., 214 N.J. 120, 145 (2013) (alterations in original) (quoting Cell S. of N.J., 172 N.J. at 81). That party must demonstrate the board's decision was "arbitrary, capricious, or unreasonable." Ibid. In other words,

> [t]he challenger must show that the Board engaged in "willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached."
>
> [Id. at 145–46 (second alteration in original) (quoting Worthington v. Fauver, 88 N.J. 183, 204–05 (1982)).]

We think it clear that the trial judge strayed from these basic tenets.

Contrary to plaintiff's argument, the issue is not whether there was substantial evidence to support the judge's conclusion that Schmidt obtained a use variance for the property in 1971. The trial on a prerogative writ claim that a board took arbitrary, capricious, and unreasonable action is not a trial de novo before the Law Division. Antonelli v. Planning Bd. of Waldwick, 79 N.J. Super. 433, 440–41 (App. Div. 1963). Contrary to the judge's characterization of the

15

issue he confronted, "the question before the Court [was not]: who gets the inference in the absence of an official record?"

Rather, the only issue before the trial court was whether on the record before it, "the [B]oard could reasonably . . . reach[] its decision" that plaintiff failed to prove Schmidt obtained a use variance in 1971. Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005) (citing Kramer, 45 N.J. at 296; Kessler v. Bowker, 174 N.J. Super. 478, 486 (App. Div. 1979)). The Board reasonably concluded that the absence of any record of borough council action on Schmidt's variance was circumstantial proof that Schmidt never obtained a use variance under the statutory framework of the MPA, which required the council to act on the Board's recommendation. Nor did the Board necessarily need to conclude that the council's approval of the Rillo and Carlone variances implied it also approved Schmidt's variance, or that if the council failed to act in 1971, its inaction was arbitrary, capricious, and unreasonable.

Plaintiff contends defendants raised the "statutory denial" argument for the first time when they sought reconsideration, and, therefore, we should ignore the legal implication of inaction by the borough council. However, the record before the Board included the absence of any council records regarding Schmidt's variance, and the presence of council records affirming the Rillo and

16                                                                      A-1075-18T2

Carlone variances. The legal impact of that absence was before the Board, at least to the extent it was aware that in 1971, its approval of Schmidt's variance request was only a recommendation for borough council action and not the grant of a variance.

Defendants also point to other reasonable inferences to be drawn from the evidence or lack thereof. For example, in his 2002 certification provided contemporaneously with the sale of the property to plaintiff, Schmidt never said he had obtained a use variance to permit the parking and storage of cars on the premises. Notably, Schmidt only certified that he had been doing so for a number of years. Given plaintiff's position regarding the interpretation of the pre-1971 ordinance, Schmidt's limited certification may have served to justify only plaintiff's claim — asserted during these proceedings — that the property was not the subject of a variance, but rather was a pre-existing, nonconforming use that predated the 1979 zoning amendments, which all agreed prohibited the outdoor parking and storage of cars going forward.

"[H]earings conducted before a zoning board of adjustment to decide an application for a land use approval are quasi-judicial proceedings." Central 25, LLC v. Zoning Bd. of Union City, 460 N.J. Super. 446, 464 (App. Div. 2019) (citing Dolan v. DeCapua, 16 N.J. 599, 612 (1954)). Local boards must make

17

factual determinations and decide issues of credibility in proceedings that include general procedural safeguards "not unlike (but not as extensive as) those controlling judicial proceedings." Baghdikian v. Bd. of Adjustment of Ramsey, 247 N.J. Super. 45, 49 (App. Div. 1991). Recognition of the special function of local land use boards leads inexorably to limits upon judicial review of their decision making, at the trial level and on appeal. Here, we agree with defendants that the trial court exceeded the proper role of limited review and substituted its judgment for that of the Board.

We therefore reverse the orders under review to the extent they held the Board's decision that plaintiff's property was not granted a use variance in 1971 was arbitrary, capricious, and unreasonable. We reinstate the Board's resolution which concluded Schmidt did not obtain a use variance for the property in 1971.

II.

In its cross-appeal, plaintiff argues that Dr. Blickstein's dual roles as author of the borough's Master Plan Revision report and Board planner violated the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25, specifically N.J.S.A. 40A:9-22.5(e), which provides that "[n]o local government officer or employee shall undertake any employment or service, whether compensated or not, which might reasonably be expected to prejudice his

18

independence of judgment in the exercise of his official duties[.]"  According to plaintiff, Dr. Blickstein's ability to render objective advice to the Board as its planner was compromised by her commitment to the objectives of the revision report.

The trial judge concurred with defendants' arguments that Dr. Blickstein's role as Board planning consultant aligned with Chatham's interests in adopting the revision report.  In addition, since there was no hint that Dr. Blickstein had any direct or indirect, personal or pecuniary interest in plaintiff's application, her dual role could not leave the public with a perception of conflicted loyalties. See Mondsini v. Local Fin. Bd., 458 N.J. Super. 290, 300 (App. Div. 2019) (discussing this subsection of the LGEL as one recognizing the "importance of public perception" of impropriety).  We agree.

The LGEL "demands that an officeholder discharge duties with undivided loyalty."  Macdougall v. Weichert, 144 N.J. 380, 401 (1996).  Nevertheless, "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions."  Wyzykowski v. Rizas, 132 N.J. 509, 524 (1993) (alteration in original) (quoting LaRue v. Twp. of E. Brunswick, 68 N.J. Super. 435, 448 (App. Div. 1961)).  Such was the case here.  We therefore reject plaintiff's cross-appeal on this issue and

affirm the conclusion reached by the trial judge that Dr. Blickstein's participation in the proceedings in no way tainted the Board's deliberations and decision.

The judge did not decide the other argument plaintiff reasserts in its cross-appeal, specifically that Chatham should be estopped from enforcing any zoning violation based on the open use of the property for outdoor storage of cars because it never cited plaintiff, or Schmidt, for violations of zoning regulations during more than forty years, from 1971 to 2013.

We need not extensively recite the governing case law but recognize some guideposts staked out by that precedent. "The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J. Super. 420, 436 (App. Div. 2002) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503–04 (1955)). As we held in Bonaventure, where we estopped a municipality from enforcing alleged zoning violations, the doctrine may apply "where the interests of justice, morality and common fairness clearly dictate that course."

Bonaventure, 350 N.J. Super at 436 (quoting Ranchlands Inc. v. Twp. of Stafford, 305 N.J. Super. 528, 538 (App. Div. 1997), aff'd, 156 N.J. 443 (1998)).

"However, the doctrine is 'rarely invoked against a governmental entity, particularly when estoppel would interfere with essential government functions.'" Ranchlands, 305 N.J. Super. at 538 (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987)). Essentially, when deciding whether or not to invoke the doctrine against a municipality, "a court must focus on the nature of the action [or inaction] taken by the municipality[.]" Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 234 (App. Div. 2002) (alteration in original) (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999). "[I]t [is] necessary to strike a proper balance between the interests of the plaintiff and the right and duty of the municipality to promote the public welfare of the community through proper planning and zoning." Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 15 (1962)).

We decline the opportunity to decide the estoppel issue in the first instance and therefore remand the matter to the trial court. Review of the above cases makes clear that critical factual determinations must be made on a case-by-case basis, and that further discovery might necessarily be needed. See R. 4:69-4 (permitting the court to manage the case, including setting "[t]he scope and time

21

to complete discovery, if any"). We leave to the court's sound discretion management of the proceedings on remand.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22